UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | |
|---|---|
| GREGORY O. JONES, # 229270, | ) ) ) |
| Plaintiff, | ) Case No. 1:14-cv-1265 |
| v. | ) ) Honorable Robert Holmes Bell |
| WILLIAM C. BORGERDING, et al., | ) ) **MEMORANDUM OPINION** |
| Defendants. | ) ) ) |

This is a civil rights action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). This lawsuit arises out of conditions of his confinement from August 26, 2013, through August 5, 2014. The defendants are MDOC's Regional Medical Officer William C. Borgerding, M.D., Nurse Practitioner Corey Grahn, Nurse Practitioner Jennifer Wierman, Physician's Assistant Joshua Buskirk, and Corizon Health, Inc. (Corizon).

Plaintiff alleges that he injured his right knee in 2004 while playing basketball, and that, afterwards, he used a knee brace on a long-term basis. On August 26, 2013, Regional Director Borgerding recommended walking and stretching exercises rather than replacement of a broken knee brace. (Compl. at 3-3A, ECF No. 1, PageID. 3-4). On September 5, 2013, during follow-up care at Duane Waters Hospital, Nurse Practitioner Grahn purportedly directed a nurse to take from plaintiff a knee brace

that was beyond repair. (*Id.* at 3A, PageID.4). Plaintiff alleges that he was treated by Nurse Practitioner Wierman on October 31, 2013, at the G. Robert Cotton Correctional Facility. Plaintiff asked Wierman to reconsider Dr. Borgerding's recommendation. She responded that she would not deviate from the doctor's orders regarding plaintiff's medical care. (*Id.* at 3B, PageID.5). Plaintiff alleges that on August 5, 2014, he was treated by Physician's Assistant Buskirk at the Saginaw Correctional Facility. Buskirk indicated that he agreed with Dr. Borgerding's recommended course of treatment and he would not recommend the changes that plaintiff requested. (*Id.* at 3D, PageID.7). Plaintiff alleges that all defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause. (*Id.*). He sues all defendants in their individual and official capacities and seeks damages and declaratory and injunctive relief. (*Id.* at 2, 4, PageID.2, 8).

The matter is before the Court on a motion for summary judgment by defendants Corizon, Grahn, Wierman, and Buskirk based on the affirmative defense of failure to exhaust administrative remedies, provided by 42 U.S.C. § 1997e(a). (ECF No. 23). Also before the Court is defendant Borgerding's motion for summary judgment based on his claim of qualified immunity (ECF No. 43). Plaintiff has responded. (ECF No. 30, 31, 54, 55).

For the reasons set forth herein, defendants' motion for summary judgment based on the affirmative defense of failure to exhaust administrative remedies will be granted in part and denied in part. The motion will be granted as to defendants

Corizon, Wierman, and Buskirk, and all plaintiff's claims against those defendants will be dismissed without prejudice. The motion will be denied as to plaintiff's Eighth Amendment claim against defendant Grahn. Defendant Borgerding's motion for summary judgment will be granted, and a partial judgment will be entered in his favor on all plaintiff's claims.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham*

*County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary*

*Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Defendants Corizon, Grahn, Wierman, and Buskirk have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court

reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th

---

[1] A copy of the policy directive is found in the record. *See* ECF No. 23-3, PageID.141-47.

Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at *16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. Id. at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator is required to ensure that the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be

completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Facts

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. Dr. William Borgerding is the Regional Medical Officer for the Northern Region of Michigan and he held that position at all times relevant to plaintiff's complaint. (Borgerding Aff. ¶ 1, ECF No. 47, PageID.266).

1. <u>Medical Care</u>

Plaintiff injured his right knee on July 3, 2004. (Complaint Exhibits A-1 to A-3, ECF No. 1-1, PageID.9-11; Plaintiff's Aff. ¶¶ 2-3, ECF No. 55-1, PageID.298). On August 26, 2013, Dr. Borgerding deferred plaintiff's request for a new knee brace. It was his medical opinion that continued use of an ACL knee brace for a nine-year-old injury was not beneficial or necessary. (Borgerding Aff.¶ 6, ECF No. 47, PageID.268-69; ECF No. 1-1, PageID.17). Dr. Borgerding was also of the opinion that walking and strengthening exercises would be beneficial. (*Id.*). No physician has offered an opinion that the course of treatment chosen by Dr. Borgerding was medically inappropriate.

2. <u>Grievances</u>

Plaintiff pursued two grievances through a Step III decision before filing this lawsuit. (ECF No. 23-2, PageID.99-100). The first grievance, Grievance No. IBC 12-10-3000-19D (ECF No. 23-2, PageID.106-09) is unrelated to any claim at issue in this lawsuit. Plaintiff's second grievance, No. RMI-13-09-1970-012I is a grievance against Dr. Borgerding and Nurse Practitioner Grahn. Plaintiff's grievance was as follows:

> I'm writing this grievance on Regional Medical Officer (Dr. Borgerding) for failure to provide prescribed treatment. On 9-5-13, I was seen by Practitioner Grahn who informed me that Dr. Borgerding informed him that since they no longer make my current ACL knee brace or replacement parts, he's denying the request for a new replacement ACL brace, which was recommended at DLW (Please see file). Furthermore, he was ordering Practitioner Grahn to discont[inue] my current ACL brace detail on the 10-5-13 and to repossess the current ACL brace I have. This action of Dr. Borgerding is a violation of my 8th Amendment right to adequate medical treatment. As this will leave my knee venerable [sic] to further damage and me to suffer excruciating pain. To resolve this grievance I demand that I be given a properly fitted ACL

>  brace or that my knee be operated on to fix the damage so that I don't need the brace for support.
> .

(ECF No. 23-2, PageID.104). This grievance was denied at Steps I, II, and III of the MDOC's grievance process. (*Id.* at PageID.101-05).

## Discussion

### I.  Defendants Corizon, Grahn, Wierman, and Buskirk

Defendants Corizon, Grahn, Wierman, and Buskirk have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford v. Ngo*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220.

Plaintiff argues that his claims against all the moving defendants should be considered exhausted because the Step III decision on Grievance No. RMI-13-09-1970-012I was untimely. (Plaintiff's Brief at 8, ECF No. 31, PageID.178). This argument is meritless. Grievance No. RMI-13-09-1970-012I was a grievance against Dr. Borgerding and Nurse Practitioner Grahn. It was not a grievance against defendants Corizon, Wierman, or Buskirk.

Dr. Borgerding has filed a separate motion for summary judgment on the merits. Dr. Borgerding did not seek dismissal of plaintiff's claim on the ground that it had not been properly exhausted.

Plaintiff argues that his references in Grievance No. RMI-13-09-1970-012I to Nurse Practitioner Grahn and the nurse practitioner's actions were "enough to satisfy

-11-

the exhaustion requirement[.]" (Plaintiff's Brief at 9, ECF No. 31, PageID.179). It is patent that Dr. Borgerding and his actions were the primary focus of plaintiff's grievance. Although it is a close call, the Court finds that plaintiff provided an adequate statement connecting Nurse Practitioner Grahn to the deprivation of the knee brace to exhaust his administrative remedies against Nurse Practitioner Grahn through Grievance No. RMI-13-09-1970-012I. *See Barney v. Corr. Med. Servs., Inc.*, No. 1:08-cv-694, 2009 WL 3711612, at *12 (W.D. Mich. Nov. 3, 2009); *Ketzner v. Williams*, 2008 WL 4534020, at *18. The motion for summary judgment by defendant Grahn based on the affirmative defense provided by 42 U.S.C. § 1997e(a) will be denied.

The Court finds that defendants Corizon, Wierman, and Buskirk have carried their burden on the affirmative defense and they are entitled to dismissal of all plaintiff's claims against them without prejudice.

**II.    Dr. Borgerding**

    A.    Eighth Amendment

Plaintiff alleges that Dr. Borgerding violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must

view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claims against defendant.

The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County* summarized the subjective component's requirements:

> Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for

> commendation, cannot under our cases be condemned as the infliction of punishment.

408 F.3d 803, 813 (6th Cir.2005) (citations and quotations omitted). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n.5; *Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.' ") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d at 550)).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against defendant Borgerding. The record shows that defendant treated plaintiff's condition and displayed no deliberate indifference. The claim that defendant "should have" provided him with "different" medical care is at best a state-law malpractice claim. *See Hollis v. Holmes*, No. 1:14-cv-580, 2016 WL 1055750, at *4 (W.D. Mich. Mar. 17, 2016). Plaintiff's disagreement with defendant's diagnosis and treatment falls far short of supporting an Eighth Amendment claim. *See e.g., Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix* v. *Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006). The doctor responsible for plaintiff's care articulated substantial reasons for refusing to provide him with the knee brace that he desires and that decision was grounded in medical judgment, not in indifference or malice.

B.  Qualified Immunity

Defendant Borgerding argues that he is entitled to summary judgment on plaintiff's claims against him on the basis of qualified immunity. "Once [an] official[] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'" *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer

suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.' " *Thompson v. City of Lebanon, Tenn.*, No. 14-5711, __ F.3d __, 2016 WL 4011166, at *2 (6th Cir. June 26, 2016); *see Holsey v. Wieber*, 811 F.3d 844, 846 (6th Cir. 2016); *see also Zuhl v. Haskins*, No. 14-2346, __ F. App'x __, 2016 WL 3346071, at *2 (6th Cir. June 16, 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. ... Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.' " (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or

constitutional question beyond debate.") (citations and quotations omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has emphasized that the second prong of the qualified immunity analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see also Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'").

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Shreve v. Franklin County, Ohio*, 743 F.3d 126, 134 (6th Cir. 2014); *T. S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). The burden applies to each claim that the plaintiff is asserting against a defendant. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

Plaintiff attempts to avoid rather than address his burden of demonstrating that Dr. Borgerding is not entitled to qualified immunity. Plaintiff offers a two-paragraph

argument. First he states that defendant's claim of qualified immunity is "perfunctory." (Plaintiff's Brief at 5, ECF No. 55, PageID.293). Defendant Borgerding's claim of entitlement to qualified immunity is not perfunctory. (*See* Defendant's Brief at 8-10, ECF No. 44, PageID.243-45).

Second, plaintiff argues that defendant's qualified immunity argument "makes no sense" because where there is "no claim under § 1983" the defense has "no need for a qualified immunity defense." (Plaintiff's Brief at 5, ECF No. 55, PageID.293) (quoting *Tucker v. Pentrich*, 2015 U.S. Dist. LEXIS 13915, at *29 (E.D. Mich. Jan. 13, 2015) and citing *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1998)). It is plaintiff's argument that is illogical, unless plaintiff is conceding that defendant Borgerding is entitled to judgment in his favor on other grounds.

The Sixth Circuit's decision in *Ahlers* stands for the unremarkable proposition that if a defendant is entitled to judgment in his favor on other grounds, a court may elect as a matter of judicial economy, not to address qualified immunity.[2] *See Ahlers*, 188 F.3d 374; *see also Mattson v. Hense*, 2:12-cv-11736, 2012 WL 5389726, at *5 (E.D. Mich. Nov. 2, 2012); *Sales v. Fayette County, Tenn.*, No. 03-2946, 2005 WL 1201145, at *7 n.5 (W.D. Tenn. May 19, 2005). It is equally appropriate for a court to address the qualified immunity issue and determine whether it provides an additional basis

---

[2]The magistrate judge's decision quoted by plaintiff is not persuasive authority. In *Tucker v. Pentrich*, No. 09-13246, 2015 WL 477200, at *11 (E.D. Mich. Feb. 5, 2015), the magistrate judge quoted a fragment of the Sixth Circuit's decision in *Ahlers* out of context. He then "declined to address the issue of qualified immunity" on the basis that the defendants' argument was "perfunctory at best." *Id.* Here, the defendant's qualified immunity argument suffers from no such deficiency.

for entry of judgment in the defendant's favor. *See e.g.*, *Fleming v. Caruso*, No. 08-13110, 2010 WL 1526439, at *17 (E.D. Mich. Apr. 16, 2010); *Johnson v. George*, No. 1:09-cv-482, 2010 WL 4553652, at *2 (W.D. Mich. Oct. 7, 2010).

Plaintiff has not demonstrated that any alleged action by Dr. Borgerding violated his clearly established Eighth Amendment rights. Generalized assertions do not suffice. *Plumhoff v. Rickard*, 134 S. Ct. at 2023; *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005). The Court finds that Dr. Borgerding is entitled to qualified immunity.

## **Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment based on the affirmative defense of failure to exhaust administrative remedies will be granted in part and denied in part. The motion will be granted as to defendants Corizon, Wierman, and Buskirk and all plaintiff's claims against those defendants will be dismissed without prejudice. The motion will be denied as to plaintiff's Eighth Amendment claim for damages against defendant Grahn. Defendant Borgerding's motion for summary judgment will be granted and a partial judgment will be entered in his favor on all plaintiff's claims.

Dated: September 29, 2016         /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  UNITED STATES DISTRICT JUDGE